## THE PEOPLE and FLAGG a. LOWBER.

*Supreme Court, First District; Special Term, February, 1858. Again, Special Term, September, 1858.*

PARTIES.—TAX-PAYER'S ACTION.—MUNICIPAL CORPORATION.

An order requiring a *bond* is satisfied by an *undertaking*, if it is such as would be effective for the same purpose.

A judgment was set aside, and proceedings in the action stayed, on condition that within thirty days the moving party file and serve a complaint in a cross action, making such parties as he should be advised. On the twenty-ninth day, the complaint was filed and served on one of the parties made defendants, but attempts made to effect service on the other, both on the twenty-ninth and the thirtieth day, were unsuccessful.

*Held*, 1. That the conditions of the order, setting aside the judgment, were complied with.

2. That no new order, staying execution on the judgment, was necessary, but that, the conditions of the first order being complied with, the stay contained therein became operative.

Even if the attorney-general may bring an action in the name of the people, to restrain a municipal corporation, it can only be from committing a fraudulent or illegal disposition of the corporate property.

Such fraud must be distinctly charged in the complaint, where it is the foundation of the action.

That no fraud is charged in the complaint in this action, upon which the same can be sustained.

The Common Council of the city of New York may order land to be purchased for a market, notwithstanding the limitation in the charter, as to the yearly value of land which they may hold.

*February.* Motion to dissolve injunction.

This was an action brought by Azariah C. Flagg, the comptroller of the city of New York, as a tax-payer and corporator, to enjoin the execution of a contract—made between the defend-

ant Lowber and the other defendants in this action, and the city of New York—for the sale to the latter of certain real estate.

Lowber had brought an action against the city, upon that contract, to recover the purchase-money. In that action, he had obtained judgment for $199,910.71 against the city.

Mr. Flagg, the individual plaintiff in the present action, had, at special term, moved for and obtained an order in that action, setting aside the answer and subsequent proceedings, with leave to him to come in and defend, or to bring a cross action. (See the proceedings on this motion, reported 5 *Ante*, 325.)

Upon appeal to the general term, this order was substantially affirmed, with modifications. (See the decision, reported 5 *Ante*, 484.)

The order entered, upon the decision of the general term, was as follows :

TITLE OF THE CAUSE.

This cause, coming on to be heard upon the appeal taken by the plaintiff from the order in this action, made by Mr. Justice Roosevelt, on the 28th of September, 1857, and upon hearing James R. Whiting, Esq., of counsel for Azariah C. Flagg, and William Curtis Noyes and David Dudley Field, Esqrs., of counsel for the plaintiff in this action, no person appearing on behalf of the defendants—the Mayor, Aldermen, and Commonalty of the city of New York—

It is ordered that the said order be modified, so that the answer and all subsequent proceedings mentioned in the said order be, and the same are hereby, set aside and vacated, provided the comptroller of the city of New York, or any other tax-payer or corporator who may be substituted in his place, shall, within thirty days after service of a copy of this order upon the said comptroller, or his counsel, file and serve an original complaint, as a tax-payer, corporator, or otherwise, on behalf of himself and others, setting forth such matters, and making such parties, and praying such relief in the premises as he may be advised, together with a bond, as hereinafter provided for; and, in the mean time, that all proceedings on the part of the plaintiff in this action be, and the same are hereby stayed. And if such action shall be commenced, then that all the proceedings in this

action on the part of the plaintiff be, and the same are hereby
stayed, until final judgment in the said action, to be commenced
by the said comptroller, tax-payer, or corporator, as above au-
thorized; provided, however, the said comptroller, tax-payer, or
corporator, the plaintiff in such action, shall give security to the
plaintiff in this action in the sum of five thousand dollars, by a
bond, with two sureties, to be approved by a justice of this
court, to pay to the said plaintiff in this action all damages
which he shall sustain by reason of the commencement of and
proceedings in such action, as is authorized by this order; the
said damages to be determined by a reference upon summary
application: provided, further, that if said action, so to be com-
menced, shall be decided against the plaintiff in such action,
then the answer and subsequent proceedings in this action, and
the judgment thereon, shall stand in full force, as if the answer
and subsequent proceedings had not been vacated, except that
the form of the judgment shall be so modified that the plaintiff
shall recover the damages awarded, on his executing and de-
livering to the present defendants a warranty deed, in the form
and with the covenants required by the agreement with the de-
fendants, set forth in the complaint, free from all incumbrances,
except as set forth in said agreement, and conveying a perfect
title thereto, except as aforesaid; the form and mode of execu-
tion of said deed to be approved by one of the justices of this
court—the title to be deemed good and satisfactory in this ac-
tion, so far as it shall be pronounced so, in the action to be com-
menced under this order.

It is further ordered, that this order stand in place of the
order appealed from.

The thirty days expired on the 30th of January, 1858.

On the 29th of January, the plaintiff filed his complaint, to-
gether with an *undertaking* in the amount required for the bond
prescribed by the order, and served the complaint, with the
summons, on the mayor; but attempts made, on that day and
on the next, to effect a service on Lowber, were unsuccessful.
On the 30th, the plaintiff obtained, from Mr. Justice Ingraham,
a temporary injunction in the action, which the defendant now
moved to dissolve.

The complaint was as follows:

*Supreme Court.*

The People of the State of New York,

On the relation of Azariah C. Flagg, a corporator and tax-payer of the city of New York, on his own behalf, and on behalf of all other the corporators and tax-payers of said city who may conceive themselves aggrieved by the matters hereinafter stated, and who shall come in and contribute to the expenses of this suit,

*against*

Robert W. Lowber, and the Mayor, Aldermen, and Commonalty of the City of New York,

Complain and show to the court that the city of New York is a body corporate and politic, by the name of the Mayor, Aldermen, and Commonalty of the City of New York, capable of suing and being sued, and of taking and holding real estate, and alienating the same with the limitations hereafter stated. That the said the mayor, aldermen, and commonalty of the city of New York, by their respective boards of aldermen and councilmen, in their ordinary forms of proceeding on the 18th day of February, in the year 1857, passed through their said boards resolutions, of which the following are copies :

*Resolved,* That the comptroller be, and he is hereby directed to purchase without delay, for the use and purpose of a market, the property of Robert W. Lowber, comprising a block and part of block of ground, lying and being in the Eighteenth Ward, and bounded by Sixteenth-street, Avenue C, and the East River ; together with the bulkhead in front thereof, extending from the centre line of Seventeenth-street ; and the water front between the centre lines of said street as continued, for the sum of one hundred and ninety-six thousand dollars ($196,000), the corporation assuming the taxes and assessments unpaid thereon, in accordance with the proposition submitted to the comptroller by Robert W. Lowber, under date of November 6th, 1856, the property to be conveyed by good and sufficient warranty deed, free and clear of all liens and incumbrances, except taxes and assessments, upon the title to the said premises being approved by the counsel to the corporation. And the sum of one hundred

and ninety-six thousand dollars is hereby appropriated for the purpose aforesaid. And provided the said taxes and assessments to be assumed by the corporation shall not exceed the sum of twenty-five hundred dollars.

*Resolved*, That the said premises, when purchased, shall be subject to the control and supervision of the commissioners of the sinking fund.

That the said resolutions were, it is alleged, on the same day presented to the mayor of the said city for his approval, who neither approved or disapproved thereof, but suffered the same to take effect by mere lapse of time.

That after the said resolutions had so become effective, the said Robert W. Lowber named therein applied to the relator and desired him to purchase the property named in said resolutions, which the relator wholly declined to do, and never after either purchased the same or entered into any negotiation therefor.

That at the time of the passage of the said resolutions through the respective boards of councilmen and aldermen, and when the same became effective by the failure of the mayor to approve or disapprove thereof, there was no money in the public treasury of the city of New York belonging to the said mayor, aldermen, and commonalty, or subject to their disposition, or under their control, to answer any such appropriation:

That no provision had been made by law, nor has there been any since, to raise by tax, or in any other way, the funds necessary to make any such purchase.

That the persons who were then members of the said respective boards of aldermen and councilmen, who voted with the majority in each of the said boards, well knew that there was not money in the city treasury, or in the hands of the city chamberlain of the said city, legally applicable to meet the said appropriation.

That the said corporation, at the time of the passage of the said resolutions, were the owners of real estate in the city of New York, yielding to them a net annual income of one hundred thousand dollars and upwards.

That by their act of incorporation, and under their legal corporate powers, the said corporation have power and authority to take, receive, have, hold, and enjoy to them and their successors

forever, in fee simple, real estate rents and other possessions, so that the same shall not at any time exceed in the whole the clear yearly rent or value of three thousand pounds per annum, money of Great Britain, beyond and above all charges and reprises, and no more, unless by express permission of the Legislature of this State.

That the said corporation, neither at the time of passing the said resolutions, nor at any time since, as the plaintiffs allege, had the power to make any such purchase, nor had they any power to direct the comptroller of the city, the relator herein, to make such purchase.

That the purchase of real estate by the said corporation then was, and still is, an executive duty, and the said board of aldermen and councilmen are deprived, under the charter of the said city, of all executive power.

That the said Robert W. Lowber, notwithstanding the refusal of the relator to purchase said property, or to comply with the direction contained in the said resolutions, as he alleges, on or about the sixteenth day of March, 1857, caused to be tendered to the relator, and to the mayor of the city of New York, a deed of conveyance of the said property, which the mayor and the said relator, each, refused to accept or to receive, or in any way to recognize so as to complete the said purchase.

That shortly after such refusal, the said Robert W. Lowber commenced a suit in the Supreme Court of this State, in the first judicial district, against the said corporation, in their corporate name, to compel them specially to perform said pretended contract, or to recover the said sum of one hundred and ninety-six thousand dollars, the consideration of the said alleged purchase.

That Richard Busteed, Esq., an attorney and counsellor of this court, who had been elected the counsel to said corporation, undertook the defence of the said suit, and appeared therein.

That a copy of the pleadings in the said cause, together with the judgment roll therein, are hereunto annexed, marked A. And the plaintiffs pray that the same may be taken and deemed a part of this their complaint.

That although the said cause was not referable under the code of procedure, as the relator is advised and alleges, the said

counsel to the said corporation consented to refer the said cause to Daniel E. Sickles, Esq., as sole referee therein.

That the said referee afterwards, and after a single hearing in relation thereto, and without taking any testimony therein, as the relator is informed and believes, reported in favor of the said Robert W. Lowber for the full amount of his claim, with interest thereon ; upon which report a judgment was entered up against the said the mayor, aldermen, and commonalty of the said city, on the 12th day of June, 1857, as appears by the record of the said judgment.

That the said counsel to the corporation, as the relator believes and therefore charges to be true, purposely withheld from the relator all knowledge of the said judgment, until after the time had elapsed within which, under the code of procedure, an appeal from the said judgment was allowed therein, and so the said corporation lost their right to appeal, as is alleged by and on behalf of the said Robert W. Lowber. And the relator avers that he had no knowledge of the entry of the said judgment until on or about the twenty-third day of July last.

That the relator is ignorant of the fact, but charges that if any notice of the entry of said judgment was ever given, pursuant to law, to the said counsel, he, the said counsel, never reported the fact either to the relator or to the said Common Council, but on the contrary thereof, as the relator believes, insists, and therefore charges, he purposely kept the same concealed from the knowledge of the relator, until more than thirty days elapsed from the service of notice thereof upon the said counsel, and, as the relator alleges and charges, to prevent an appeal therein.

That an execution has been issued by the said Robert W. Lowber against the said corporation upon the said judgment, and the same has been placed in the hands of the sheriff of the city and county of New York, who has levied upon the personal property of the said city, in order to enforce satisfaction thereof.

That at the time of the passage of the said resolutions for the purchase of the said land, the whole thereof was not, in the belief of the relator, worth more than about one half of the sum directed to be paid therefor.

That the said Robert W. Lowber had not then, nor has he now, as the relator verily believes, any title whatever to the

land so directed to be purchased, and so proposed to be sold by him, lying within said plot and east of Tompkins-street.

That the diagram hereto annexed shows the plot proposed to be sold by said Robert W. Lowber to the said corporation, the only title thereto then or now existing in the said Lowber, as the relator verily believes, is from the easterly line of Avenue C to the westerly line of Tompkins-street, although the said Robert W. Lowber claims title to the same beyond the easterly line of Tompkins-street, and the plot therein, as colored brown.

That the said Robert W. Lowber alleges that the said counsel to the corporation examined the title to the said property, and reported the same to be good and free from incumbrance, and gave his written certificate to that effect; whereas the relator charges that the said counsel to the corporation did not, in point of fact, examine the said title, but has admitted that he passed the same on the certificate of counsel who were the counsel of the said Robert W. Lowber, which the said counsel to the corporation well knew, and regardless of a decision of the Superior Court of the city of New York, which court had held and decided adversely to said Lowber's title, on a question arising out of the claim of said Lowber to contiguous property, which claim of title stands upon the same basis as the title to the property in question in the suit of the said Robert W. Lowber against the said corporation. That the relator did not make discovery of said want of title, or if he did, owing to the pressure of his official duties it escaped his attention, until it was too late for him to set up such defence. And he is advised, and believes, that the title to all the land claimed by said Lowber to the eastward of Tompkins-street is in the people of this State, and not in the said Robert W. Lowber.

That after the discovery thereof, notice was given on behalf of the relator to the said Richard Busteed, that the title of said Lowber was defective in respect and to the extent before stated, and the said Busteed was requested by the counsel of the relator to take the necessary and proper means to open the said judgment, so that the corporation could be let in to a defence on the principal grounds of failure of title.

That the said land then was, and still is, as the relator believes, incumbered by a mortgage thereon, given by the said Lowber, in the sum of forty thousand dollars, for principal, be-

sides interest, and also by several judgments which then stood open of record against him, to the amount of about thirteen thousand dollars, and were apparent liens thereon.

That notwithstanding these facts were brought to the knowledge of the said corporation counsel, he neglected and refused to take any action for the relief of the said corporation in the premises, but insisted that the said corporation should pay the said judgment; that the said counsel was applied to, to permit the relator to take the necessary legal steps, in the name of the said Busteed, as attorney for the relief of the corporation, against the said judgment, at the relator's own expense, which he has hitherto refused and declined, and still refuses and declines to do. That, thereupon, an application was made to the board of aldermen to permit measures to be taken to relieve the city from the said judgment, which was refused by a majority vote of the said board of aldermen. That the said board of aldermen, before they so refused, were fully informed of the above facts, and were well advised thereof; and notwithstanding said objections, contrary to, and regardless of, their duty in that behalf, passed a preamble and resolutions of which the following are copies:

*Whereas* a judgment was, on the 12th day of June last, recorded in the Supreme Court by Robert W. Lowber against the mayor, aldermen, and commonalty of the city of New York, upon which judgment an execution has been levied upon the personal property of the said mayor, aldermen, and commonalty. Therefore, be it

*Resolved,* That the counsel to the corporation be, and he is hereby directed to institute such proceedings as may be necessary and proper to enforce the payment of the said judgment and execution by the corporation.

*Resolved,* That the counsel to the corporation be, and he is hereby authorized and empowered, in case he shall deem the same expedient, to enter into a stipulation or agreement with the plaintiff in the said judgment, or his attorney and the sheriff, for the release of the personal property of the city from the levy already made, or which might be made, by virtue of the execution issued upon the said judgment, without prejudice to the rights of the plaintiff therein, and for the levy of the same upon and sale of the real estate of the said mayor, aldermen, and commonalty.

*Resolved*, That the counsel to the corporation appear and defend the rights of the mayor, aldermen, and commonalty of the city of New York, in any action or proceeding touching or concerning the said judgment.

That afterwards the said last-mentioned resolutions were sent to the board of councilmen for their concurrence; that they came up for the action of the said board on the evening of the 24th day of August last, when Councilman Ottarson introduced a preamble setting forth a variety of facts tending to show that the title of said Lowber to the said property was defective, and that said purchase ought not to be completed, and accompanied by a resolution of which the following is a copy:

*Resolved*, That the counsel to the corporation be required to report, as early as possible, to this board, all the grants, laws, and decisions upon which the alleged title of said Lowber rests; with his opinion upon the validity of said title, so far as it covers ground or water beyond the line of Tompkins-street, as established by the Legislature, and also as beyond the river line of the grant made by the city to Hezekiah Bradford.

Which resolution was negatived by a majority vote thereon. That thereupon, and immediately thereafter, and on the same evening, the said board of councilmen, by a majority thereof, regardless of their duty in that behalf, and in violation thereof, took up and concurred in or adopted the said resolutions, so as aforesaid, passed by the said board of aldermen.

That the said resolutions were, on the 25th day of said month of August, sent to the mayor, Fernando Wood, for his concurrence, who, as the relator has been informed, on the next day, with a full knowledge of all the said facts and circumstances, approved of the said resolutions, so as to give them full force and effect.

That the relator is a citizen of the city of New York, and one of the commonalty thereof; that he owns real and personal property in the said city, which has been taxed, and still is liable to further annual taxation, and he has paid taxes thereon.

That he is the comptroller of the said city, and at the head of the "department of finance therein." That, by the present charter of the said city, "the executive power of the said corporation is vested in the mayor and the executive departments."

That the said corporation, in the passage of the said original resolutions, have been and are guilty of an abuse of their trust and of usurpation in office.

That the said mayor of the city, knowingly and wilfully, and as the relator has reason to and does believe, purposely and surreptitiously permitted the first set of resolutions to come into effect by mere lapse of time without vetoing the same.

That the said suit was commenced and carried on by the said plaintiff, and was referred by consent and reported thereon, and the said judgment suffered to be recovered by the said plaintiff, by and through the neglect of the duty of the said corporation counsel.

The complainants further charge and insist, that the said corporation in respect to the matters aforesaid, have been guilty of exercising a franchise and transacting a business not allowed by the charter or any law of this State.

That the relator caused an effort to be made by counsel, in his behalf, by an application to the Supreme Court of the first judicial district, to be heard upon affidavits to open the said judgment, or for relief in the premises, before which court the said corporation counsel appeared, and in open court objected to the relator's right to be heard upon such motion, and with a knowledge of the facts alleged as the grounds of said motion, declared in open court that he would not make any such motion or take any such steps in the said cause to open or set aside said judgment, or set up any other defence to the said suit than he had already done.

That the counsel for the said Robert W. Lowber also appeared in the said court and objected to the said motion, and denied the jurisdiction of the said court to entertain the said motion, or permit the counsel for the relator even to be heard thereon; and the said counsel to the corporation under his name as their attorney, and the attorney for the said Robert W. Lowber, each in said court signed a written consent or request that the said court should deny the said motion.

That the said Supreme Court, at special term thereof, held at the City Hall, in the city of New York, made an order upon the said motion, of which the paper hereto annexed, marked B, is a copy. From which decision at special term the said Robert W. Lowber appealed to the general term of the said court,

which said court afterwards modified the said first-mentioned order, and made an order therein, of which the paper hereto annexed, marked C, is a copy, which said orders the relator prays may be taken as part of this complaint.

The plaintiffs therefore pray this honorable court, to grant them an injunction order to stay any further proceedings by the said Robert W. Lowber, upon or under the said judgment or execution, by way of enforcing the said judgment or execution, until the further order of the court in the premises. And the plaintiffs pray that by the judgment and decree of this court the said execution and judgment may be set aside, and altogether held for naught, and that the said corporation, by their corporate name, may be perpetually enjoined from completing the said purchase of the said land of or from the said Robert W. Lowber under the said pretended contract, and that it may be declared by the judgment of this court, that the said resolution of the said corporation, of the eighteenth day of February, one thousand eight hundred and fifty-seven, is not a binding and valid contract for the purchase of the said property; or for such other, &c.

*Wm. Curtis Noyes, R. Busteed*, and *Barbour & Cowles*, for the motion.

*James R. Whiting*, opposed.

DAVIES, J.:—I regard the complaint in this cause as amended by striking out therefrom the words, " on the relation of." It therefore stands as a suit wherein the People, &c., and Azariah C. Flagg, corporator and tax-payer, are parties plaintiff.

The order made at the general term of the Supreme Court on the 7th December, 1857, in the case of Lowber *a*. The Mayor, &c., declares that the answer interposed in that case, and all subsequent proceedings therein, including the recovery of the judgments mentioned therein, were set aside and vacated, provided the comptroller or any other tax-payer or corporator should, within thirty days after the service of that order, file and serve an original complaint as tax-payer, corporator, or otherwise, on behalf of himself and others, setting forth such matters, and making such parties, and praying such relief as he may be advised, together with a bond as thereinafter provided; and in

the mean time all proceedings in that action were stayed. And it was further provided, that if such action should be commenced, then that all proceedings therein should also be stayed until the final judgment in such action, provided a bond was given to Mr. Lowber in the sum of $5000, conditioned to pay him all damages which he might sustain by reason of the commencement of this action. It appears from the papers before me, that the time limited for the commencement of the suits by the order of the general term expired on the 30th day of January last.

That the complaint in this cause was filed in the clerk's office' on the 29th day of January last, together with the bonds or undertaking required by said order.

That on the same day the summons and complaint were served on the mayor of the city, but that ineffectual attempts were made to serve the same on that day and the succeeding on the defendant Lowber.

. I cannot doubt that the order of the general term, requiring an original complaint to be filed and served within thirty days, has been complied with, and that that condition having been fulfilled, the order of the general term, which directed the answer and all subsequent proceedings, in the case of Lowber a. The Mayor, &c., including the judgment, to be set aside and vacated, took effect according to its terms, and the same were accordingly set aside and vacated.

It cannot be said that that order has not been complied with, because the people have been made parties plaintiffs with the tax-payer and corporator.

Permission was expressly given by the general term to the tax-payer and corporator of making such parties in the suit to be instituted as he might be advised. It was, therefore, perfectly proper for him to make the people parties to the action; and if they, by their proper officer, consented to be made parties plaintiffs rather than defendants, there can be no objection to such a procedure.

It was further urged that the order of the general term required a bond to be executed on the commencement of the suit, and that that provision of the order has not been complied with, by the execution of an undertaking. The court manifestly intended to require security to the party stayed in the suit pending against the corporation, and whether it is called

a bond or an undertaking is a matter of no moment. It is the substance we are to look at. Has Mr. Lowber received the security contemplated by the order of the general term? Undeniably he has, and whether it is in the form of a bond, as used under the old system of practice, or that of an undertaking, known and exclusively used under the new, is not a just cause of objection. He has the security required by the order, and which will be effective for him in case the contingency arises in which he can use it. All the conditions required by the order of the general term having in my judgment been complied with, is the order of Justice Ingraham, made on the 30th of January, correct?

If I am right in the view I have expressed, it was not necessary, as the order of the general term stayed all proceedings in the suit therein referred to, and as soon as this suit was commenced there was no longer any judgment or execution to be stayed.

The argument, therefore, that such order was irregular because a bond, in accordance with the provision of the Revised Statutes, was not given, has no force. This court, by virtue of the control and authority which it has over its own proceedings and records, has set aside and vacated the judgment mentioned in the complaint in this cause, whether rightfully or not is not for me to say. Such I understand to be the order of the general term, and as long as it remains unreversed, it is binding upon this court. The injunction order, therefore, should, in my judgment, have been to restrain any further proceedings in the suit instituted by Mr. Lowber against the corporation until the final determination of this suit, and the injunction order will be modified accordingly.

The complaint presented good grounds for such an order, being in furtherance of that made at the general term, and the undertaking executed and filed was all the security required by the Code.

The motion to vacate the injunction order in this case, made January 30, 1858, is denied, but the same is to be modified according to the suggestions above.

*September*, 1858.—Motion to dismiss complaint.

The defendants put in answers denying the allegations of the

complaint. The cause came on in June for trial at a special term, before Mr. Justice Ingraham. The defendants moved to dismiss the complaint on several grounds : the principal of which were, that under the decision of the court in Roosevelt *a.* Draper (*Ante*, 108), a tax-payer could not maintain such an action; that the people had no interest in the subject-matter of the action, and could not maintain it, or if really concerned, they could not go behind the legislative action of the Common Council; and that the complaint did not disclose a cause of action.

The parties were represented by the same counsel as on the previous motion.

INGRAHAM, J.—This action is brought in the name of the People, and A. C. Flagg, as comptroller of the city and a corporator and tax payer, on his own behalf and on behalf of all other corporators and tax-payers, against the defendants, to obtain an injunction staying the proceedings upon a judgment, and praying that the judgment recovered by the defendant Lowber may be set aside ; and that the defendants, the Mayor, &c., may be enjoined from completing the purchase of certain land from Lowber for a market purpose, and to declare such contract void.

The Common Council by resolution directed such purchase to be made in January, 1857, in the Board of Aldermen, and in February, 1857, by the Board of Councilmen.

By the omission of the mayor to sign or return the same with his objections, this resolution became a law at the expiration of ten days. The deed was tendered to the mayor and comptroller, who refused to accept the same, or to complete the purchase. Subsequently Lowber brought an action against the Mayor, &c., and recovered against them the amount of the consideration money of the said premises so agreed to be sold, and has issued an execution thereof. The cause was brought on upon the pleadings, and a motion was made to dismiss the complaint for the reasons hereafter stated.

The complaint alleges various reasons : such as want of power to make the purchase; the improper mode of making it—by the resolution, and not by the comptroller; that the purchase was illegal ; that the price paid for the land exceeded its value ; that

the property was incumbered by mortgage ; and that, in passing the resolution for the purchase, the Common Council was guilty of an abuse of trust and of usurpation in office.

The defendants filed their answers, denying the allegations upon which the action was founded.

This action was brought in pursuance of an order made by this court at general term, in the action of Lowber *a.* The Mayor, &c., on the motion to modify the order staying proceedings, in which an action was required to be commenced in the name of the comptroller, or some other tax-payer, and security was to be given for damages arising from the injunction.*

---

* The general term by which that order was made was held by Justices Mitchell, Clerke, and Peabody. Mr. Justice Peabody dissented from the opinion of the majority of the court. He rendered on that occasion the following dissenting opinion :

If there is any evidence of fraud or collusion in this case, there certainly is none connecting the plaintiff with it. The circumstances of suspicion attach only to acts to which he was not necessarily, and is not shown to have been, a party. I think, however, that there is no satisfactory evidence of fraud or collusion on the part of any one, not even of those with whom he dealt, and in this, as I understand the opinion of my brethren, I concur with them. I am unable, however, to go with them to the conclusion at which they have arrived. The question of fraud and collusion being disposed of, the only one remaining is one of error in the judgment ; and whether there be or be not error, is a question which cannot be tried in this manner. It can properly be tried on an appeal from the judgment, and only in that manner. But if the relief asked could be had on motion, it could be had only on the application of a party to the record, against whom the erroneous judgment was made. If in a suit by A against B, injustice be done the latter by the judgment therein, he alone can have relief against it. Whether the remedy be by appeal or by motion, the party injured alone is entitled to it ; and an application by a third person, not a party to the proceedings, cannot properly be entertained. Mr. Flagg, in contemplation of law, is a stranger to this suit. His official relation to the city gives him no right here, and he has no standing in court to make this motion.

The city might make it if it desired to, and would be entitled to be respectfully heard on the merits ; and if it produced the same evidence which is now before us on the motion of Mr. Flagg, it would be entitled only to have it respectfully denied. It has been said that a corporator and tax-payer can maintain an action in such a case on behalf of himself and others similarly related to the subject of the litigation ; and the doctrine has the sanction of several cases in this district—all of them, however, relating to the corporation of the city of New York Whether this doctrine will ever receive the sanction of a court beyond the boundaries of this judicial district, and whether in this district it will ever be sustained as to any corporation except that of the city of New York, may perhaps be very well doubted. The weight of judicial authority, even here,

Since that order was made, the general term of this district has decided that no tax-payer could maintain such an action.

This decision would control me as to the maintenance of this action in the name of a tax-payer, whatever might be my opinion upon the question then submitted to the general term; and as far as it is sought to maintain this action in the name of the comptroller, as a tax-payer, under that decision, I would be bound to dismiss the complaint.

The people of the State are also joined as plaintiffs, and the question is then presented whether they can maintain an action against a municipal corporation for any alleged fraud in making a contract, or to prevent the exercise of powers not possessed by them under their charter.

Proceedings by way of information have often been brought in England and this country against corporations, and are common in the books. Those proceedings have repeatedly been sustained to restrain such corporations from doing acts in viola-

---

is not decidedly in its favor, as is shown by the masterly argument of Mr. O'Conor in the case of Wetmore *a.* Story (22 *Barb.*, 447).

The most that can be said in the light that he has thrown on the subject by his examination of the cases, is, that the question is left somewhat in doubt on authority even here. But that doctrine, if sustained, is far from affording sanction to a proceeding like this. That a person not a party to a judgment, but only remotely, and to a very trifling extent, interested in its consequences, may, in the absence of fraud or collusion, without the assent of either party to it, and in spite of their mutual oppositions in a suit even in his own name, set it aside, not only as to himself, but as to thousands of others similarly situated, without the co-operation or even consent of any one of them, is a doctrine which, if it be a law, is certainly not to be extended on any slight provocation. But when such a person asks permission without the formality or responsibility of a suit in his own name even, to thrust himself between the plaintiff and defendant in the original suit, and in a motion against both to have a judgment set aside for his own convenience or pleasure, a new position is taken, a novel attitude surely is assumed, and one hitherto unknown to the course and practice of the law. There is no claim of any precedent for this proceeding. But it may be said that the novelty of the case is but a feeble argument against it; and such a remark, I fear, is not inconsistent with the spirit of the times. My own feeble opinion, however, will not affect the result in this case; and with a consciousness of this, and in the absence of any urgent reason to wander therefrom, I must be excused the indulgence of a desire, the offspring of weakness though it may be, to keep within a path hitherto not entirely untrodden, but which has been at least explored, and within sight of some of the old and recognized landmarks of the law.

I think that the order of the court below should be reversed and the motion denied, and that the judgment originally entered should be allowed to stand—at least until some party to it arise to question such judgment.

tion of their charters, or from exercising powers not possessed by them. In the Attorney-General *a.* The Birmingham and Oxford Railroad Company (8 *Law & Eq. R.*, 425), the Lord Chancellor says : " The attorney-general has the power to restrain public companies from doing an act which they are authorized to do, where it interferes with the rights of the public ; but it is a different thing to say where a work is authorized to be done, that he may restrain the doing of the work, until the company shall perform other work." Again : " Where acts are being done injurious to the public interests, inasmuch as the public interests might otherwise be neglected, the attorney-general has in such a case authority to represent the public."

In the Attorney-General *a.* Wilson (9 *Sine,* 30, *Jur.,* 890), it is said : " The court has jurisdiction to relieve against collusive alienations of corporate property."

The cases cited in the Attorney-General *a.* Utica Insurance Company (2 *Johns. Ch. R.,* 370), seem to hold a contrary opinion, or at least to leave the question in much doubt.

By section 428 of the Code, proceedings by information are abolished, and an action is substituted for it, and the enumeration in sections 429 and 430, specifying in what cases the attorney-general may bring an action in the name of the people, adds to the difficulty.

It must be observed, however, that all these were cases brought in the name of the attorney-general, and not of the people of the State. How far any action may be maintained in the name of the people for such a cause may well be doubted. I do not, however, consider it necessary for the disposition of this case to decide that question now. Even conceding that the action may be maintained in the name of the people to restrain municipal corporations in certain cases, I have no hesitation in adopting the conclusion that those proceedings cannot be carried to the extent to which it is sought to use them in this action. If the action can be maintained at all, it can only be to prevent the commission of fraudulent acts in regard to the corporate property, and the doing of acts not authorized by their charter.

However unwise, improvident, extravagant, or unnecessary a purchase a municipal corporation may intend to make, neither

the attorney-general nor any tax-payer has, in my judgment, any right to interfere by action and by injunction. The Common Council have the power, under their charter, to provide for and regulate markets. They have the sole right to establish markets. It is a franchise which is conferred upon them by the supreme authority, and with it is conferred all necessary power to carry into effect the exercise of that right. It would have been an idle grant to the city authorities to confer on them the franchise of establishing and regulating the public markets, and at the same time withhold the power to procure the place where such market should be built. It would be an idle grant to bestow upon them the right of collecting the fees of the markets which they should thus establish, and yet prohibit them from purchasing the place necessary for earning such fees.

I think there can be no doubt but that the principle is a correct one, that the grant of the franchise relative to markets in the city charters necessarily carries with it the right to purchase the land on which such market is to be established. But it was said, even if so, the power is controlled by the limitation of the corporation as to the real estate which it may hold, in the provision allowing the purchase of lands, not exceeding in the whole the clear yearly value or rent of £3000.

It may well be questioned whether, under the various acts of the Legislature, any force remains in this limitation. The Legislature, having so repeatedly provided by law for the purchase of lands which far exceed in value and rent the amount to which the corporation was originally limited, have virtually annulled this provision and rendered it nugatory. The increase from property thus authorized to be purchased far exceeds in value the limited amount, exclusive of the increase which has taken place in the property purchased originally within that limitation.

But if there be any virtue remaining in the restriction, there are several reasons why it does not apply to the purchase in this case.

For the reason before stated, that the right to establish a market or markets at such places as shall from time to time be ordered, established, and erected by the Common Council of the city (see *Kent's Ch.*, 59), necessarily conferred the power to hold the land on which such market was to be erected.

No revenue is to be derived from the lands purchased for a

market, if so used, except for market purposes. These fees the city is authorized to receive. Such revenue, therefore, cannot be considered as coming within the limit before referred to. The grant of power to establish as many markets as the Common Council should think fit thereupon, clearly shows that, in bestowing such a power, the Legislature contemplated that the increase of the city would require, from time to time, an increase of markets for the use of the inhabitants. Under such circumstances, it would be unreasonable to say that the Legislature, at the same time when providing for the necessities of the inhabitants of the city in giving them the markets needed by them, should have, by a limitation as to the value of the land to be purchased by the corporation, deprived them of the means of carrying into effect these provisions.

The two provisions of the charter must be so construed as to give effect to both; and, while this limitation is to be applied to the purchase of land by the city for other purposes (if it now has any force whatever), it does not destroy or control the right, previously conferred, to erect and establish markets, and, as a necessary consequence, to purchase lands therefor, as the corporation should deem proper.

It is also urged, in favor of maintaining this action, that, by the charter, no executive business should be performed by the Common Council, but that the executive power of the corporation should be vested in the heads of the departments.

Without stopping to examine the question whether the purchase of land, by an ordinance or resolution, is an executive act, within the meaning of the charter, of which I entertain a great doubt, there is clearly, in the resolutions passed by the Common Council for the purchase of this land, no violation of that section (§ 9, Amended Charter). The resolution authorizing the purchase, directs the comptroller to make the purchase for the use of a market, limiting him as to price, and defining the dimensions of the lands to be purchased. The comptroller had previously advertised for and received proposals for the sale of the land in that neighborhood, and had submitted such proposals to the Common Council. The selection from those offers, of the land best suited for the purposes contemplated, and the limitation of the price, was a legislative and not an executive act, within the province of the Common Council, and properly ex-

ercised by them. The duty that was executive was making the contract, receiving the deed, and making the payment. This duty was, by the resolution, confided to the comptroller, and, so far as any thing appears before me, I see no executive act performed, or attempted to be performed, by the Common Council in this matter.

I do not understand this section as taking from the Common Council the right to control, by legislation, the discretion of the officer, in selecting themselves the site, and fixing the price at which the purchase is to be made ; but, after those things are settled by an act of legislation, they cannot, either by a committee or otherwise, do any thing to carry into effect that legislation. Such powers must be exercised by the head of the department. The want of an appropriation, out of which this money was to be paid, is not a ground for maintaining this action. It affords no ground to the attorney-general to proceed against the defendants, to restrain them in the manner asked for in the complaint. These are all the grounds on which the plaintiff's counsel seek to restrain the defendants, except the alleged fraud on the part of the corporate authorities. If any such fraud is charged, equity can give relief, on a proper application. The corporation might undoubtedly apply, and, where the Common Council is so frequently changed in its members, the fair supposition is, that a successive body would require such a proceeding to be commenced, if they believed fraud had existed. There is still time for the present Common Council to institute proceedings, if any fraud has been discovered. In the absence of proceedings on their part, I have, for the purposes of this action, conceded that the attorney-general might commence the action. It is, therefore, necessary to examine the complaint, to ascertain whether any such fraud is charged in the transaction, as would vitiate the proceeding.

Where the whole foundation of the action rests upon the fraud, such fraud should be charged as the ground of the action. If, without such allegations, the people, by the attorney-general, have no right to interfere, then it should be shown by the complaint that the parties had been guilty of acts of fraud, which would authorize the court to restrain the collection of a judgment that appears to be regular.

The complaint shows the proceedings by the Common Coun-

cil, in authorizing originally the purchase by the comptroller; the presentment of the deed by Lowber, and demand of the purchase money; the action brought by Lowber, and recovery of judgment therein; that such action was referred by consent of parties; that an execution was issued thereon; that the price to be paid therefor was double the value of the property; that the title was defective; that the counsel to the corporation reported the title to be good; that the land was incumbered by a mortgage; that the counsel for the corporation refused to take any measures for the relief of the corporation; that an application was made to the corporation, and they passed resolutions upon the subject, which the complaint avers to have been passed by them regardless of their duty; that the mayor suffered the resolutions to become a law, without signing or vetoing the same, surreptitiously; that the action was referred by the counsel, and judgment suffered through neglect; that the relator applied to the court to have the judgment opened, which was opposed by the counsel to the corporation, and Lowber, on the ground that the relator had no right to interfere, or to be heard upon such motion; and that an order was made by the general term, providing for bringing this action, and for giving security thereon.

It appears to me that these facts, as stated in the complaint, do not show such facts as will warrant the court in charging fraud upon the Common Council. No fraud is averred. They are charged with neglect of duty, in refusing to apply to set aside the judgment, and with proceeding in violation of the provisions of the charter, but no fraud is charged against them, and, under this complaint, no fraud could be proven by which the plaintiffs could succeed.

I do not consider that the discretion of the Common Council in legislation can be controlled by the courts. If they have authority to legislate, their discretion as to what should be passed or rejected, is a matter exclusively for themselves. They may pass improvident laws, they may make improvident purchases, they may pay for land prices which some would think exorbitant, but neither the attorney-general nor a tax-payer has a right to call them before the courts, to show that their legislation was discreet, that the prices paid by them did not exceed the actual value, or that it was wise to pass the ordinances or resolutions they may adopt.

Nor are the acts of the counsel any ground for maintaining this action. It was his duty to examine the title, and comply with the directions of the Common Council so far as those directions did not conflict with the law. His consent to refer the cause of Lowber against the corporation, even if ill-advised, was not illegal, but was expressly authorized by the Code, which provides for the reference of all causes by consent. His objections to the motion in the Supreme Court, to open that judgment, were made in pursuance of a resolution passed by the Common Council, after full knowledge of the transaction in regard to the recovery of the judgment, and of a resolution directing him to take measures to enforce payment of said judgment, which was passed by the Common Council, and approved by the mayor, in August, 1857.

This deliberate action of a subsequent Common Council, without any charge of fraud on their part, must be treated as a ratification of the action of the previous Common Council in authorizing the purchase, and the counsel to the corporation would have departed from the line of his duty if he had, for any supposed want of discretion on the part of the Common Council, in passing the resolution of purchase, or improvidence in making the contract, attempted to disobey such resolutions.

The heads of departments do not hold their places independent of the legislation of the Common Council, and where such legislation is not in violation of law, they have no right or power to refuse obedience to such legislation because they may deem it unwise or improvident.

There is no difficulty, on the part of the Common Council, in instituting this action in the name of the corporation, if they believe the contract to have been made fraudulently or illegally; and when two successive Common Councils have refused to make any attempt to set aside the contract, and one has expressly directed the counsel to take measures to compel the payment of the money, the acts of the counsel in carrying out those resolutions cannot be condemned.

My conclusions are, that if it be conceded that the attorney-general may bring an action, in the name of the people, to restrain a municipal corporation, it can only be from committing a fraudulent or illegal disposition of the corporate property.

That such fraud must be distinctly charged in the complaint, where it is the foundation of the action.

That no fraud is charged in the complaint in this action, upon which the same can be sustained.

That the resolution passed by the Common Council, authorizing the comptroller to make the purchase of the land in question was within their powers, as conferred by the charter.

That the Common Council may order land to be purchased for a market, notwithstanding the limitation in the charter as to the yearly value of land which they may hold.

And that, in passing such resolution, they did not violate any of the restrictions contained in the charters of the city.

The motion to dismiss the complaint is therefore granted.