THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE NEW YORK DISPENSARY, Respondent, v. ANDREW H. GREEN, Comptroller of the City of New York, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARY A. SCHANCK, Executrix, etc., Respondent, v. THE SAME, Appellant.

*Common council of New York — power of, to make lease — who to sign — Comptroller to indorse thereon a certificate that there is a sufficient appropriation to pay the amount to fall due in the current fiscal year.*

Under the charter of the city of New York of 1873 (chap. 335 of 1873), it is not a part of the duties of the comptroller to execute leases on behalf of the city, and the common council cannot impose that duty as a compulsory one upon him.

No lease executed in pursuance of the directions of the common council is of any force or effect until the comptroller, in pursuance of section 29 of the charter, indorses thereon a certificate that there remains unexpended and unapplied a balance of the appropriation applicable to the payment of rent upon leases, sufficient to pay the installments accruing during the current fiscal year, as they are certified to him by the officer making the contract. The certificate is not required to include the rent for the entire period of the term of the lease.

The appeal in the first case is from a judgment sustaining a demurrer to the appellant's return to an alternative mandamus, and in the second, from an order quashing the appellant's return to an alternative mandamus.

Each of these applications was for an alternative mandamus requiring the comptroller to execute leases of certain property in the city of New York, in pursuance of resolutions to that effect passed by the common council. The comptroller refused to execute them, on the ground that there was no money in his hands applicable to the payment of the rents to fall due under them.

*William C. Whitney*, for the appellant.

*A. C. Brown*, for the respondent.

Davis, P. J.:

In the first of the above entitled cases, the court, at Special Term, sustained the demurrer of the relator to the return of the comptroller, and ordered judgment thereon in favor of the relator. In the second, the court quashed the return of the comptroller as immaterial and irrelevant, and ordered a peremptory writ of mandamus. Both of the cases present substantially the same question. The point is now made on behalf of the comptroller, that the duty of executing leases ordered by the common council does not appertain to his office, and that he cannot be compelled by mandamus to execute such leases notwithstanding the common council, by resolution, have requested and authorized him so to do. This question does not seem to have been considered by the court below, and only indirectly to have been presented in one case; but it is one which must be considered here, because, in determining whether the writ of peremptory mandamus shall be issued by the court against a public officer compelling him to perform an alleged official duty, it is primarily important that it should appear that the duty and the power to perform it belong to his office, and are incumbent upon him as such officer.

By the act, entitled "An act to reorganize the local government of the city of New York," passed April 30th, 1873 (chap. 335 of the Laws of 1873, p. 484), the legislative power of the corporation

PEOPLE ex rel. N. Y. DISPENSARY v. GREEN.   13

First Department, December Term, 1875.

is vested in the common council, and no restraint seems to be imposed upon that power, so far as it relates to the making or taking of leases, except what is found in section 18 of the act. That section declares that "the common council shall have no power * * * to take or make a lease of any real estate or franchise, save at a reasonable rate, and for a period not exceeding five years, unless specially authorized so to do by act of the legislature." By fair inference from this language, the power to take a lease of real estate, for a period not exceeding five years, exists in the common council, and they have exclusive authority by an act of legislation, expressed by ordinance or resolution, subject to the approval of the mayor, to determine what leases shall be taken and made, and for what periods within the limitation of the section, subject however, as we think, before the lease can become a binding contract upon the city, to the provisions of another section of the act to which reference will hereafter be made. Where the common council have, with the approval of the mayor, resolved in due form to take a lease at a rent which they shall have determined to be reasonable, for a period not exceeding five years, the question arises, by whom shall the instrument expressing the terms of the lease and evidencing the obligations of the parties be executed on the part of the city? The only provision of the charter directly relating to that subject, is to be found in that section of the act which relates to the power and duties of the clerk of the common council amongst which are certain duties expressed in these words: "He shall keep the seal of the city, and his signature shall be necessary to all leases, grants and other documents, as under existing laws." The clerk of the common council is appointed and removed by that body; their authority over him is exclusive of all other branches of the city government, and it is incumbent upon him to perform whatever legal duties may be imposed upon him by the council. The counsel in this case have failed to find any other provision of the charter directly relating to the execution of leases when ordered to be taken or made by resolution or ordinance of the common council. The comptroller is by the charter placed at the head of the finance department. His powers and duties are defined by article 5 of the chapter, and are to be found in sections 29 to 35, both inclusive. A diligent search of these sections fails

14    PEOPLE ex rel. N. Y. DISPENSARY v. GREEN.

First Department, December Term, 1875.

to disclose any provision or language which imposes upon him the duty to execute leases when directed to do so by the common council. It is supposed by the counsel for respondent, that section 90 of the act confers power upon the common council to require the comptroller to do that duty; but a careful reading of that section shows that such requirement is neither within its scope or purpose. The language is: " Whatever provisions and regulations, other than those herein specially authorized, may become requisite for the fuller organization, perfecting and carrying out of the powers and duties prescribed to any department by this act, shall be provided for by ordinance of the common council, who are hereby authorized to enact such necessary ordinances." The effect of this provision is to authorize the common council to enact such ordinances as may become requisite for the perfecting and carrying out of the powers and duties prescribed to a department by the act. But it nowhere gives power to impose upon a department powers and duties not prescribed by the act. Finding the duty to execute leases ordered by the common council nowhere expressly imposed upon the comptroller as a part of his official duties, and no express authority given to the common council to require him to do that act, it is essential to ascertain whether the duty is imposed indirectly or by implication. It is in its nature a ministerial duty, the act to be performed being one which any officer of the city if empowered by law could as well do as another, because its effect is simply to evidence in authentic form the leases which the common council have directed to be made. There is no solemnity attending that act requiring it to be performed by the comptroller in preference to any other officer; and in the specification of the duties imposed upon him, there is nothing in their nature which makes it essential or important that he should give official evidence or sanction to the act of taking or making a lease when ordered by the legislative department. There is, however, one duty devolved upon him to which reference has already been made, which seems in some degree incompatible with the duty of executing a lease taken by the city. It is found in the twenty-ninth section, in these words: " No contract hereafter made, the expenses of the execution of which is not by law or ordinance, in whole or in part, to be paid by assessments upon the

property benefited, shall be binding or of any force or effect, unless the comptroller shall indorse thereon his certificate that there remains unexpended and unapplied, as herein provided, a balance of the appropriation applicable thereto sufficient to pay the estimated expense of executing such contract, as certified by the officer making the same.  It shall be the duty of the comptroller to make such indorsement upon every such contract so presented to him, if there remains unapplied and unexpended such amount so specified by the officer making the contract, and to thereafter hold and retain such sum to pay the expense incurred until the said contract shall be fully performed; and such indorsement shall be sufficient evidence of such appropriation in any action."   This language is extremely general, and seems to embrace in its terms *all contracts* made by the city which are not therein expressly excepted.  A lease taken by the city, upon which rent is reserved to be paid from time to time by the corporation, seems clearly to fall within this provision.  The expenses of its execution are very clearly the payment of the several installments as they respectively become due; and the provision declares in effect that the lease shall not be binding or of any force or effect "unless the comptroller shall indorse thereon his certificate that there remains unexpended and unapplied a balance of the appropriation applicable thereto, sufficient to pay the estimated expense of executing such contract, as certified by the officer making the same." We think the true construction of this section requires that the comptroller, upon all leases made for a term of years, is to certify whether there remains unexpended and unapplied a balance of the appropriation applicable to the payment of rent upon leases, sufficient to pay the installments accruing during the current fiscal year, as the same are certified to him by the officer making the contract; and that it is not intended by this provision to require a certificate which shall include the rent for the entire period of the term of the lease.  If the comptroller, therefore, be bound under the ordinance of the common council, to execute the lease, he himself becomes the officer who has to certify to himself what this provision of section 29 requires; and there is an apparent impropriety in requiring him, where there is no appropriation remaining unexpended, sufficient to pay the current rents falling

16    PEOPLE ex rel. N. Y. DISPENSARY v. GREEN.

First Department, December Term, 1875.

due within the fiscal year, to execute an instrument which he must immediately nullify by refusing to indorse his certificate upon it. It places him, under the construction that would impose the duty of executing the lease upon him whenever the common council shall request and authorize it to be done, in the embarrassing position of executing an instrument in form, which, in substance and matter of fact, has no validity whatever, because of his inability to indorse upon it the required certificate. Recurring again to the duty imposed upon the clerk, of "signing all leases," it is apparent that the comptroller, if he executed the leases in question, could not make a perfect instrument under the law, because by statute the signature of the clerk and the corporate seal, which is by law in his custody, must still be affixed to the instrument. The comptroller has no power to compel the clerk to perform these acts; and if the clerk in any case should refuse to do them, it is manifest the lease would be an inoperative instrument; the act of the comptroller would in such case be an idle and ineffective one. Why then should it be required at his hands? Why should courts be asked, by peremptory mandamus, to compel the comptroller to execute a lease which involves, legally speaking, the complete acts of "signing, sealing and delivery," when he can under the statute do at most only the first? Besides, where the comptroller has signed a lease, and the clerk also has signed and sealed the instrument, it becomes somewhat questionable which of these officers is to make the certificate which authorizes the comptroller to make the indorsement upon the contract required by the twenty-ninth section of the charter. All these embarrassments disappear if we regard the power given to the clerk to sign all leases, and the authority which the common council possesses over him and over the seal in his custody to direct its use, as designating that officer as the more proper one for the execution of leases directed by that body.

It is alleged, however, that the question of the power of the common council to direct the comptroller to execute leases has been passed upon by the courts; and our attention has been called to several decisions made under the charter of 1857. (*People* v. *Wood*, 4 Parker, 144; *People* v. *Connolly*, 2 Abb. [N. S.], 321; *People* v. *Lowber*, 7 Abb. Pr., 158.)

PEOPLE ex rel. N. Y. DISPENSARY v. GREEN.    17

First Department, December Term, 1875.

In the case of *The People* v. *Wood*, in which the mayor, alder-men and commonalty of the city of New York were indicted for misdemeanor, the question was, whether those officers who had voted a lease for more than ten years, in violation of the statute, did an act which the charter declared to be a misdemeanor ; and it was held by the learned judge (Mullin, J., presiding at Oyer and Terminer), that the defendants, by voting for the resolution to lease, were not liable for a misdemeanor, because the statute made the giving of the lease the violation which was designated as such misde-meanor.    The resolution directed the comptroller to execute a lease of premises described therein, and the court incidentally discussed the power of the comptroller to execute such lease.    The learned judge was under the impression that the power was conferred on the comptroller, as in the course of his opinion he says : "Again, by the city charter, the common council and mayor cannot make a lease.    That power is expressly conferred on the comptroller, and the resolution conforms to the charter and leaves the execution of the lease to the officer who alone can rightfully make it."

No doubt the legislature might confer this power upon the comp-troller ; and whenever that has been done, his duty would be apparent.

The learned justice was probably mistaken in his assump-tion that the charter of 1857 did confer such power; but that was a point not material to his decision, which rested upon the ground, already stated, that the act declared a misdemeanor had not yet been consummated.

The other cases cited arose under the charter of 1857.    Section 8 of that charter provided that the common council might estab-lish other bureaus than those established by the act, and might assign to them, *and to the departments and bureaus created by the act*, such duties as they might direct, not inconsistent with the act. Under this provision power to execute leases might well be con-ferred upon the comptroller and exercised by him, and in the absence of the provision contained in section 29 of the present charter, as above quoted, there would be nothing inconsistent in so doing with the powers expressly conferred by that charter.

The cases cited are not, therefore, in conflict with the views now expressed, and with the construction due to the charter of 1873,

although the courts in each of them consider the comptroller to have been the proper officer to execute the instruments. We feel constrained to hold that under the charter of 1873, it is not a part of the duties of the comptroller to execute leases on behalf of the city; that the common council cannot impose that duty as a compulsory one upon him. The more proper officers are, we think, the president of the council and his clerk, and particularly the latter whenever the resolution of the common council shall direct him to execute the instrument.

The orders of the court below must therefore be reversed, and the writs of mandamus denied.

DANIELS, J., concurred.

Ordered accordingly.